UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PENTAX CORPORATION,

                              Petitioner,

            - against -

VISION-SCIENCES, INC.,

                           Respondent.

Case No.

**PETITION TO STAY ARBITRATION**

Claimant PENTAX Corporation ("Pentax"), as and for its Petition To Stay Arbitration against Defendant Vision-Sciences, Inc. ("VSI"), states as follows:

A.    **INTRODUCTION**

    1.    This action arises out of an agreement between VSI and Asahi Optical Co., Ltd. ("Asahi"), dated as of March 16, 1992 (the "Agreement"). After the Agreement was entered into, Asahi changed its corporate name to PENTAX Corporation, as of October 1, 2002. Hence, the Agreement is presently between VSI and Pentax.

    2.    Under the Agreement, VSI agreed to purchase certain endoscope units, parts and accessories from Pentax, upon terms and conditions set forth in the Agreement.

    3.    The Agreement was amended three times, which had the effect of extending the term of the Agreement through March 15, 2009. A copy of the Agreement, with its amendments, is annexed as Exhibit A.

    4.    A dispute under the Agreement has arisen between the parties. The Agreement provides that in the event of a dispute, the parties will subject the dispute to arbitration "in accordance with the rules and regulations of a mutually acceptable International Arbitration

Organization." VSI unilaterally commenced an arbitration with the American Arbitration Association, in New York (the "Arbitration"). This is not a mutually acceptable International Arbitration Organization. Hence, there is no agreement to arbitrate before that organization, a necessary pre-condition to arbitration has not been met, and the Arbitration that VSI has purported to commence should be stayed.

## B.     THE PARTIES

5.     Pentax is a corporation organized under the laws of Japan. The address of its head office is 36-9, Maeno-cho 2-chome, Itabashi-ku, Tokyo 174-8639, Japan.

6.     VSI is a corporation organized under the laws of the state of Delaware, USA. VSI maintains its principal offices at 40 Ramland Road South, Orangeburg, New York.

## C.     JURISDICTION

7.     There is complete diversity of citizenship among the parties, as Pentax is a corporation located in and organized under the laws of Japan, and VSI is a Delaware corporation, with its principal place of business in New York. Venue is proper pursuant to 28 U.S.C. § 1391.

8.     The amount in controversy exceeds $75,000.

9.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (a)(2).

## D.     ARBITRATION AGREEMENT

10.    Section 9 of the Agreement states as follows:

SECTION 9: ARBITRATION

In the event of a disagreement over any term or provision contained in this Agreement which has not been resolved by the parties hereto within sixty (60) days after both parties have written notice of such dispute, the parties hereby agree that the matter shall be settled and finally determined by arbitration in accordance with the rules and regulations of a mutually acceptable International Arbitration Organization. The decision rendered in any such arbitration shall be final and binding upon the parties and may be

entered in any court having jurisdiction thereof for a judicial acceptance of the award or an order of enforcement, as the case may be. The parties shall each pay one-half of the reasonable costs and expenses incurred for the fees and expenses of the arbitrator or arbitrators.

SECTION 10: GOVERNING LAW

This Agreement shall be governed by and interpreted in accordance with the laws of Japan. This Agreement is in the English language only, which shall be controlling for all purposes.

11.     The place of any arbitration that is to be conducted under this clause is not set forth in the Agreement.

## E.    VSI'S PURPORTED ARBITRATION DEMAND FAILS TO COMPLY WITH THE AGREEMENT AND IS INEFFECTIVE

12.     The parties have not come to an agreement as to a mutually acceptable International Arbitration Organization, or to a venue for the arbitration. Rather, VSI has unilaterally purported to commence an arbitration proceeding with the American Arbitration Association in New York, New York. A copy of its Notice of Arbitration is annexed as Exhibit B. The Notice of Arbitration was delivered to Pentax in Japan on December 14, 2007, Japan time.

13.     Pentax has not agreed to conduct any arbitration with the American Arbitration Association, and has not agreed to conduct an arbitration in New York.

14.     The American Arbitration Association's International Centre for Dispute Resolution is not a mutually acceptable International Arbitration Organization, and New York is not a mutually acceptable venue for conducting an arbitration.

15.     Hence, VSI has not satisfied a necessary condition precedent to commencing the arbitration.

16.    In addition to the fact that there is no agreement to arbitrate before the American Arbitration Association, VSI named as a party to the Arbitration "Pentax Medical Company, a Division of Pentax of America Inc." However, PENTAX Medical Company is not a party to the Agreement, and hence, is not a party to any arbitration agreement with VSI.

17.    The American Arbitration Association has informed Pentax that in its view, no arbitration has been commenced there, since there is no agreement to arbitrate before the American Arbitration Association.

18.    Pentax requests an order staying the Arbitration, on the ground that a necessary condition precedent to arbitration has not been satisfied, to wit, that the parties agree upon a mutually acceptable International Arbitration Organization to conduct the arbitration.

19.    In the event that an arbitration were to proceed in the American Arbitration Association over Pentax's objection, any award rendered in that arbitration would not be enforceable, since it would be based on an Arbitration to which Pentax did not agree.

20.    Pentax submits that a mutually acceptable International Arbitration Organization is the International Chamber of Commerce.

21.    The International Chamber of Commerce is the largest and most commonly accepted international arbitration organization in the world. It regularly conducts arbitrations in countries around the world, and is accustomed to handling disputes between companies from different cultures and legal systems. The International Chamber of Commerce is for the express purpose of handling international cases. On the other hand, the American Arbitration Association is historically a specifically American organization, that only recently created an international arm (the ICDR).

22.     Pursuant to Article 14(1) of the ICC Rules of Arbitration, the International Chamber of Commerce will determine the location of the hearings in the event that the parties cannot agree.

23.     It is respectfully requested that in the event the parties cannot come to an agreement as to the International Arbitration Organization to conduct the arbitration within a reasonable period of time, which Pentax suggests is 30 days, that the Court direct that the parties submit the dispute under the Agreement to the International Chamber of Commerce.  The International Chamber of Commerce can then determine the venue of the arbitration, in the event that the parties cannot come to an agreement themselves.

WHEREFORE, it is respectfully requested that the Arbitration that VSI purported to commence be stayed, and that in the event the parties cannot agree upon a mutually acceptable International Arbitration Organization within 30 days, that they be ordered to submit their dispute to the International Chamber of Commerce.

Dated: New York, New York
       January 2, 2008

NIXON PEABODY LLP

By: _____
      Frank H. Penski (FP 9221)
      Robert C. Sentner (RS 5223)
      Tamar Y. Duvdevani (TD 7603)
      437 Madison Avenue
      New York, New York 10022
      (212) 940-3000

*Attorneys for Petitioner PENTAX Corporation*

EXHIBIT A

SUPPLY AGREEMENT


This Supply Agreement (the "Agreement"), dated as of March 16, 1992, between Vision-Sciences, Inc., a Delaware corporation ("VSI"), and Asahi Optical Co., Ltd., a Japanese corporation ("Asahi"),


WITNESSETH:


WHEREAS, Asahi manufactures certain endoscope units and accessories; and


WHEREAS, VSI desires to purchase certain endoscope units, parts and accessories from Asahi and Asahi desires to sell such products to VSI all upon the terms and conditions set forth in this Agreement.


NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto hereby agree as follows:


SECTION 1:  PRODUCTS AND DEFINITIONS

1.1  PRODUCTS.  Subject to the terms and conditions of this Agreement, Asahi agrees to manufacture and sell to VSI and VSI agrees to purchase from Asahi certain Asahi Components.

1.2  DEFINITIONS.  For purposes of this Agreement capitalized terms used herein shall have the following meanings:

      (a)  Asahi Components shall mean any standard or catalog devices, subassemblies and components used to assemble or repair VSI Endoscopes.

      (b)  Asahi Information shall mean any design documentation which are the property of Asahi and utilized in the manufacture of Asahi Components, VSI Endoscopes or any improvements of either.

      (c)  VSI Endoscope shall mean any endoscope designed by VSI which incorporates a disposable sheath assembly including disposable channels and which is manufactured using VSI Information.

      (d)  VSI Information shall mean any design documentation, information, knowledge, data, issued or pending patents or materials which are the property of VSI and utilized in the manufacture of VSI Endoscopes or any improvements thereof.

      (e)  VSI Specification shall mean any product or quality standard specified to Asahi by VSI for Asahi Components to be purchased by VSI.

SECTION 2:  PURCHASE AND SALE OF PRODUCTS.

2.1  QUANTITY.  During the term of this Agreement, VSI will provide Asahi with a three month firm written purchase order for the exact quantity and VSI Specifications of all the Products it shall purchase during such three month period.  Asahi will confirm

- 2 -

purchase order with expected delivery dates within fourteen (14) days. Once Asahi has confirmed purchase order, Asahi shall give equal priority to the production and delivery of Products for VSI as to any such Products or substantially similar products produced for the benefit of Asahi. Nothing in this Agreement shall prohibit VSI from manufacturing or contracting with another party to manufacture any VSI endoscope.

2.2  PRICE. Asahi will provide VSI with firm price quotations prior to purchase order.

2.3  DELIVERY. Asahi shall deliver to VSI any Products ordered by VSI in finished form according to VSI Specifications and packaged in the manner requested by VSI. Asahi shall ship VSI's orders to such locations as VSI may from time to time hereafter designate in writing to Asahi, F.O.B. Asahi's place of manufacture. Shipping costs will be added to VSI's invoice or shipped freight collect. If Asahi fails to meet VSI's delivery requirements and VSI finds it necessary to require shipment of any Product by a method of transportation other than the method originally specified, Asahi shall reimburse VSI the amount, if any, by which the cost of the more expeditious method of transportation exceeds the cost of the method of transportation originally specified unless such failure is due to causes beyond the control and without fault or negligence of Asahi.

2.4  PAYMENT. Payment for each shipment to VSI of the Products is due from VSI within thirty (30) days following VSI's receipt of the Products.

- 3 -

SECTION 3:  WARRANTY AND NON-CONFORMING PRODUCTS.

3.1  WARRANTY.  The Products purchased by VSI and delivered by Asahi hereunder shall conform to VSI Specification.  Asahi provides no warranty to VSI but agrees to discuss in good faith any Asahi Products problems requiring product exchange or recall.

3.2  NON-CONFORMING PRODUCTS.  VSI may reject any Product (or shipment) which does not conform to VSI Specifications.  In order to reject a Product, VSI must give notice to Asahi of VSI's intent to reject within ten (10) days after VSI's receipt of the alleged non-conforming Products.  Asahi will replace Non-Conforming Products with other Products of good quality as soon as possible.

SECTION 4:  PATENT

VSI takes all responsibilities regarding the patent infringement claimed by any third party as to the VSI endoscopes including the patent regarding the parts VSI purchased from Asahi and keeps Asahi indemnified from the third party's claim. On the other hand, Asahi does not require VSI to pay to Asahi royalty for the parts VSI purchases from Asahi and Asahi offers assistance to VSI in defending the claim brought up by third party.  In case VSI endoscope or its parts purchased from third party infringes Asahi's patent, VSI is ready to pay royalty.

SECTION 5:  PROPRIETARY INFORMATION

5.1  CONFIDENTIALITY.  VSI and Asahi each shall, during the Initial Term or any Renewal Term of this Agreement and thereafter for eternity, hold in confidence, and use its best efforts to have all of its affiliates, agents, officers, directors and

employees hold in confidence, all knowledge and information of a secret or confidential nature with respect to the business of the other party and shall not disclose, publish or make use of the same without the consent of the other party for any purpose whatsoever, except to the extent necessary to fulfill its obligations hereunder or if such information shall have become public knowledge other than by breach of this Agreement or except as may be required by law.  Upon termination or expiration of this Agreement, each party shall, within two (2) business days of receipt of a request thereof, return to the other party all copies of all confidential information of the requesting party and all other tangible manifestations of such confidential information.

5.2  COMPENSATION.  VSI and Asahi each agree that the remedy at law for any breach of this Section 5 would be inadequate and that the non-breaching party shall be entitled to injunctive relief in addition to any other remedy it may have upon breach of any provision of this Section 5.

SECTION 6:  TERM OF AGREEMENT

6.1  INITIAL TERM.  The term of this Agreement shall commence as of the date hereof and shall remain in full force and effect until the third anniversary of the date hereof (the "Initial Term"), unless renewed as provided in Subsection 6.2 below or sooner terminated pursuant to Section 7 hereof.

6.2  RENEWAL TERM.  At the expiration of the Initial Term (and, if applicable, at the expiration of any Renewal Term),

- 5 -

the term of this Agreement shall be automatically renewed for
additional two (2) year period ("Renewal Term") unless this
Agreement is terminated pursuant to Section 7 hereof or unless
either party provides the other with one (1) year prior written
notice of its intent not to renew this Agreement.

SECTION 7:  TERMINATION

This Agreement may be terminated during the Initial Term
or any Renewal Term, at any time, as follows:

7.1  MUTUAL CONSENT.  By the written mutual consent of VSI
and Asahi.  In the event of such termination by agreement, except
as set forth in Section 5 hereof, neither party shall have any
further obligation or liability under this Agreement.

7.2  BREACH.  By the non-breaching party if there has been
a breach of any material provision of this Agreement by the
other party which breach either (i) cannot be cured by the
breaching party, or (ii) has not been cured by the breaching
party within thirty (30) days of having received written notice
of such breach from the non-breaching party.

7.3  BANKRUPTCY.  At the option of the other party, if
either party makes any assignment for the benefit of creditors,
or if a receiver, trustee in bankruptcy or similar officer shall
be appointed to take charge of all of either party's property,
or if either party files a voluntary petition under federal
bankruptcy laws or similar statutes or such a petition is filed
against either party and is not dismissed within sixty (60) days.

- 6 -

SECTION 8:  FORCE MAJEURE

Neither party hereto will be liable to the other for default or delay in the performance of any of its obligations hereunder (except an obligation to make payments when due), including, but not limited, due to Act of God, accident, fire, riot, war, strike, concerted acts of workers, governmental law, ordinance, rule or regulation, whether valid or invalid, inability to obtain electricity or other type of energy, raw material, labor, equipment or transportation, or any similar or different contingency beyond its reasonable control which would make performance commercially impracticable.  If such party shall have used its reasonable efforts to avoid such occurrence and minimize its duration, such party shall give notice to the other party in writing promptly, and thereupon the affected party's performance shall be excused and the time for performance shall be extended for the period of delay or inability to perform due to such occurrence.


SECTION 9:  ARBITRATION

In the event of a disagreement over any term or provision contained in this Agreement which has not been resolved by the parties hereto within sixty (60) days after both parties have written notice of such dispute, the parties hereby agree that the matter shall be settled and finally determined by arbitration in accordance with the rules and regulations of a mutually acceptable International Arbitration Organization.  The decision rendered in any such arbitration shall be final and binding upon the parties and may be entered in any court having jurisdiction

thereof for a judicial acceptance of the award or an order of enforcement, as the case may be.  The parties shall each pay one-half of the reasonable costs and expenses incurred for the fees and expenses of the arbitrator or arbitrators.

SECTION 10:  MISCELLANEOUS PROVISIONS

10.1  GOVERNING LAW.  This Agreement shall be governed by and interpreted in accordance with the laws of Japan.  This Agreement is in the English language only, which shall be controlling for all purposes.

10.2  WAIVER.  The waiver by any party of a breach or a default of any provision of this Agreement shall not be construed as a waiver of any succeeding breach of the same or any other provision, nor shall any delay or omission on the part of a party to exercise or avail itself of any right, power or privilege that it has or may have hereunder operate as a waiver of any right, power or privilege.

10.3  NOTICES.  Any notice or other communication required or permitted to be delivered in connection with this Agreement must be in writing in the English language and shall, when mailed (which mailing must be accomplished by first class mail, registered mail or certified mail, postage prepaid, or overnight courier service) or telefaxed, be deemed given three (3) days after deposited in the mails or one (1) day after delivered in person or to the telefax company, respectively, addressed to the addressee as follows or to such other address which addressee

shall have specified in a notice actually received by the
addressor:

        To VSI:      Vision-Sciences, Inc.
                     6 Strathmore Road
                     Natick, Massachusetts 01760
                     Facsimile: (508) 650-9976

                     Attn: Mr. David W. Prigmore, President


        To Asahi:    Asahi Optical Co., Ltd.
                     36-9, Maeno-cho 2-chome,
                     Itabashi-ku, Tokyo
                     Facsimile: (03) 3960-5226

                     Attn: Mr. Kinhei Yajima, Managing Director


    10.4  ENTIRE AGREEMENT.  This Agreement contains the full
understanding of the parties hereto, except the Letter Agreement
dated March 14, 1992 regarding indemnification provided to Asahi
by VSI, with respect to the subject matter hereof and supersedes
all prior understandings and writings relating thereto.  No waiver,
alteration, amendment, or modification of any of the provisions
of this Agreement shall be binding unless made in writing and
signed by each of the parties hereto.  The parties hereto hereby
confirm that this Agreement shall have no effect upon the Non-
Exclusive License Agreement entered into September 28, 1989 by
and among Asahi, OpieLab, Inc., a wholly-owned subsidiary of VSI
and O.S. Limited Partnership, a limited partnership organized
and existing under the laws of the State of Washington.


    10.5  SEVERABILITY.  In the event that any provision of this
Agreement is held by a court of competent jurisdiction to be
unenforceable because it is invalid or in conflict with any law of
any relevant jurisdiction, the validity of the remaining provisions

契約書コピー配付リスト

契約内容

　　　相 手 先　　Vision Sciences, Inc.

　　　契 約 日　　March 16, 1992

　　　契約名称　　Supply Agreement


配付先　　　　　　　配付日

矢島常務殿　　　　1992 - 3 - 3

清永部長殿　　　　1995 - 7 - 4

shall not be affected, and the rights and obligations of the parties shall be construed and enforced as if this Agreement did not contain the particular provision held to be unenforceable.

10.6  SUCCESSORS AND ASSIGNS.  This Agreement shall be binding and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives and successors.  It is not the intention of either party to assign this Agreement.  VSI may request Asahi's written consent, which will not be unreasonably withheld, in the case VSI seeks to assign by merger or sale of assets.

10.7  STATUS OF PARTIES.  The relationship of the parties hereunder shall be and at all times remain one of independent contractors, and neither party shall have any authority to create or assign obligations on behalf of the other party hereto.

10.8  COUNTERPARTS.  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which shall be one and the same document.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year set forth above.


VISION-SCIENCES, INC.                    ASAHI OPTICAL CO., LTD.

By: _____           By: _____
    David W. Prigmore                        Tohru Matsumoto
    President                                President

AMENDMENT
TO SUPPLY AGREEMENT

THIS AMENDMENT, made and entered into as of this 1st day of October, 2002 by and between Vision Sciences, Inc., a corporation organized and existing under the laws of Delaware, having its registered office at 9 Strathmore Road, Natick, Massachusetts 01760, U.S.A. (hereinafter referred to as "VSI") and Pentax Corporation, a corporation organized and existing under the laws of Japan, having its registered office at 2-36-9, Maeno-cho, Itabashi-ku, Tokyo 174-8639, Japan (hereinafter referred to as "PC")

WITNESSETH:

WHEREAS, VSI and PC (ASAHI Optical Co., Ltd. changed its company name to Pentax Corporation as of 1st October, 2002.) entered into a Supply Agreement as of 16th day of March, 1992 (hereinafter referred to as "Original Supply Agreement") under which PC sells to VSI and VSI purchases from PC the (1) standard or catalog devices, subassemblies and components to be incorporated into VSI's products and (2) accessories of PC's endoscope products ; and

WHEREAS, VSI and PC have recently reached an accord of their opinions to amend Original Supply Agreement,

NOW, THEREFORE, it is hereby agreed between the parties hereto as follows:

1.    VSI and PC acknowledge that Original Supply Agreement have been renewed for 8 years after the expiration of the Initial Term in accordance with Article 6.2 of Original Supply Agreement and that current expiry date of the term of Original Supply Agreement is March 16, 2003.

2.    Article 6.2 of Original Supply Agreement shall be amended to read as follow:

"6.2 Renewal Term

1

At the expiration of the Initial Term (and, if applicable, at the expiration of any Renewal Term), the term of this Agreement may be renewed for additional two (2) year period ("Renewal Term") by mutual agreement at least three (3) months prior to the expiration."

3.    This Amendment shall become effective as of the day first above written.

4.    Except to the extent amended by this Amendment, Original Supply Agreement is hereby in all respects confirmed and shall continue in full force and effect.

5.    This Amendment has been signed in two counterparts each of which shall be deemed to be an original. Each party acknowledges, by its signature to this Amendment, the receipt of a fully signed original counterpart.


   IN WITNESS WHEREOF, the parties have signed this Amendment as of the date first hereinabove written.

                    Vision Sciences, Inc.


               By: _____
                    Katsumi Oneda, President/CEO

               Date: 10/15/02


               Pentax Corporation


               By: _____
                    Nobuo Miura,
                    Senior General Manager/SEO
                    Life Care Business Headquarters

               Date: 2 OCT. 2002


                         2

Memorandum

THIS Memorandum, made and entered into as of this 16th day of March, 2003 by and between Vision Sciences, Inc., a corporation organized and existing under the laws of Delaware, having its registered office at 9 Strathmore Road, Natick, Massachusetts 01760, U.S.A. (hereinafter referred to as "VSI") and Pentax Corporation, a corporation organized and existing under the laws of Japan, having its registered office at 2-36-9, Maeno-cho, Itabashi-ku, Tokyo 174-8639, Japan (hereinafter referred to as "PC")

WITNESSETH:

WHEREAS, VSI and PC entered into a Supply Agreement as of 16th day of March, 1992 (hereinafter referred to as "Original Supply Agreement"), as amended under an Amendment dated October 1, 2002, under which PC sells to VSI and VSI purchases from PC the (1) standard or catalog devices, subassemblies and components to be incorporated into VSI's products and (2) accessories of PC's endoscope products ; and

WHEREAS, VSI and PC have reached an accord of their opinions to extend the terms of Original Supply Agreement for additional two year period,

NOW, THEREFORE, it is hereby agreed between the parties hereto as follows:

1.   In accordance with Article 6.2 of Original Supply Agreement, VSI and PC agreed that the terms of Original Supply Agreement are extended for two-year period from March 16, 2003.

2.   This Memorandum shall become effective as of the day first above written.

3.   Except to the extent amended by this Memorandum, Original Supply Agreement is hereby in all respects confirmed and shall continue in full force and effect.

1

4.     This Memorandum has been signed in two counterparts each
of which shall be deemed to be an original.  Each party
acknowledges, by its signature to this Memorandum, the receipt
of a fully signed original counterpart.


     IN WITNESS WHEREOF, the parties have signed this Memorandum
as of the date first hereinabove written.

                         Vision Sciences, Inc.

                         By: _____

                             Ron Hadani, President/CEO

                         Date: _July 11, 2003_____


                         Pentax Corporation


                         By:  _H. Ueda_____
                             Hirohisa Ueda,
                             General Manager,Exective Officer
                         Medical Instrument Division
                         Life Care Business Headquarters

                         Date: _Jul 4 , 2003_____

2

## Memorandum

This Memorandum is made and entered into as of this 23 day of May, 2006, by and between Vision-Sciences, Inc., a corporation organized and existing under the laws of Delaware, having its registered office at 9 Stratmore Road, Natick, Massachusetts 01760, U.S.A. (hereinafter referred to as "VSI") and Pentax Corporation, a corporation organized and existing under the laws of Japan, having its registered office at 2-36-9, Maeno-cho, Itabashi-ku, Tokyo 174-8639, Japan (hereinafter referred to as "PC").

## WITNESSETH:

WHEREAS, VSI AND PC entered into a Supply Agreement as of 16th day of March, 1992 (hereinafter referred to as "Original Supply Agreement"), as amended under an Amendment dated October 1, 2002 and as extended under a Memorandum dated as of March 16, 2003, under which PC sells to VSI and VSI purchases from PC the (1) standard or catalog devices, subassemblies and components to be incorporated into VSI's products and (2) accessories of PC's endoscope products; and

WHEREAS, VSI and PC have reached an accord to extend the term of Original Supply Agreement for an additional two year period.

NOW, THEREFORE, it is hereby agreed between the parties hereto as follows:

In accordance with Article 6.2 of Original Supply Agreement, VSI and PC agreed that the term of Original Supply Agreement is extended for a two-year period from March 16, 2005. The parties further agree that Section 6.2 of Original Supply Agreement is hereby amended to read as follows:

"6.2 RENEWAL TERM. At the expiration of the Initial Term (and, if applicable, at the expiration of any Renewal Term), the term of this Agreement shall be automatically renewed for an additional two (2) year period ("Renewal Term") unless this Agreement is terminated pursuant to Section 7 hereof or unless either party provides the other with six (6) months prior written notice of its intent not to renew this Agreement."

This Memorandum shall become effective as of the day first above written.

Except to the extent amended by this Memorandum, Original Supply Agreement is hereby in all respects confirmed and shall continue in full force and effect.

This Memorandum has been signed in two counterparts each of which shall be deemed to be an original. Each party acknowledges, by its signature to this Memorandum, the receipt of a fully signed original counterpart.

IN WITNESS WHEREOF, the parties have signed this Memorandum as of the date first hereinabove written.

Vision-Sciences, Inc.

By: _____

Ron Hadani, President/CEO

Date: _____ May 23, 2006 _____

Pentax Corporation

By: _____
    IKUZO OKAMOTO
    Managing Director

Date: _____ May 23, 2006 _____

05/22/2006 11:00 AM

** TOTAL PAGE.10 **

EXHIBIT B



I C
D R
International Centre
for Dispute Resolution

## NOTICE OF ARBITRATION

*MEDIATION is a non-binding process. The mediator assists the parties in working out a solution that is acceptable to them. If you would like the ICDR to contact the other parties to determine whether they wish to mediate this matter, please check this box ☐ There is no additional administrative fee for this service.*

| | |
|---|---|
| **Date:** | 12/11/07 |
| **To: Name** (of the party on which this Notice is to be served) | Pentax Medical Company    **Nationality:** USA |
| **Address:** | 102 Chestnut Ridge Road |
| **City:** | Montvale    **State/Province:** New Jersey  **Country:** USA    **Post Code:** 07645 |
| **Telephone:** | 800-431-5880    **Facsimile:** _____  **Email:** _____ |
| **Name of Representative:** (if known) | _____  **Name of Firm:** (if applicable) _____ |
| **Address:** | |
| **City:** | _____  **State/Province:** _____  **Country:** _____  **Post Code:** _____ |
| **Telephone:** | _____  **Facsimile:** _____  **Email:** _____ |

The named claimant, a party to an arbitration agreement contained in a written contract, dated   3/16/1992   providing for arbitration under the

- [X] International Dispute Resolution Procedures
- [ ] Commercial Arbitration Rules and Mediation Procedures (AAA)
- [ ] Procedures for Cases under the UNCITRAL Arbitration Rules
- [ ] Other (please specify): _____

hereby demands arbitration.

**Nature of the Dispute:** (attach additional sheets, if necessary)    Breach of Contract

**The Claim or Relief Sought:** (the amount, if any)    Injunctive/Monetary

**Type of Business: Claimant:** Medical product manufacturer **Respondent:** Medical product manufacturer

**Claimant's Request: No. of Arbitrators:** 1    **Place of Arbitration:** New York    **Language:** English

*You are hereby notified that copies of our arbitration agreement and this NOTICE are being filed with the INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION at its 1633 Broadway, 10th Fl., New York, NY, USA location, with a request that it commence administration of the arbitration. Under the rules, you may file a Statement of Defense within the time specified in the rules after notice from the administrator.*

| | |
|---|---|
| **Name of Claimant:** | Vision Sciences, Inc.    **Nationality:** USA |
| **Address:** (to be used in connection with this case) | 40 Ramland Rd South |
| **City:** | Orangeburg    **State/Province:** NY    **Country:** USA    **Post Code:** 10962 |
| **Telephone:** | 800-431-5420    **Facsimile:** 845-365-0620    **Email:** _____ |
| **Name of Representative:** (if known) | Hal Shaftel    **Name of Firm:** (if applicable) Proskauer Rose LLP |
| **Address:** | 1585 Broadway |
| **City:** | New York    **State/Province:** NY    **Country:** USA    **Post Code:** 10036 |
| **Telephone:** | 212-969-3230    **Facsimile:** 212-969-2900    **Email:** hshaftel@proskauer.com |

*To begin proceedings, please send two copies of this demand and the Arbitration Agreement, with the filing fee as provided for in the rules, to the ICDR. Send the original demand to the respondent.*

**Signature** (may be signed by a representative) _____    **Title:** Partner    **Date:** 12/11/07

If you have any questions, please contact the International Centre for Dispute Resolution at
1.888.855.9575 or +1.212.484.4181 or visit our website at www.icdr.org.

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
AMERICAN ARBITRATION ASSOCIATION – NEW YORK CITY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
VISION-SCIENCES, INC.,                                        :
                                  Claimant,                   :
        -against-                                             :
                                                              :
PENTAX CORPORATION and PENTAX                                 :
MEDICAL COMPANY, a Division of Pentax of                      :
America, Inc.,                                                :
                                  Respondents.                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### CLAIMANT VISION-SCIENCES, INC.'S ARBITRATION DEMAND

Claimant Vision-Sciences, Inc. ("VSI"), by its attorneys Proskauer Rose LLP,
upon personal knowledge as to matters relating to itself and upon information and belief
as to all other matters, alleges the following for its Demand herein:

### Nature of Proceeding

1.      This action arises out of the long-term relationship between VSI, which
develops, manufactures and markets innovative medical devices, and respondents Pentax
Corporation and its American subsidiary, Pentax Medical Company, a Division of Pentax
of America Inc. (collectively "Pentax"). Beginning in 1992, Pentax has supplied VSI
with critical component parts, including, in particular, components used to manufacture
endoscopes and related devices for transmitting images internal to the body during
various types of medical procedures. Pentax has sold VSI the components pursuant to
agreements that require Pentax to meet delivery schedules and "give equal priority to the
production and delivery of Products for VSI" as it gives to other Products. In recognition

of both VSI's dependence on Pentax as a sole supplier for key components and the time-consuming process required to find an alternative supply source, the contract – which does not expire until March 2009 – does not permit one party to terminate the Supply Agreement, absent circumstances not applicable here, and never raised by Pentax.

2.      Over the course of approximately fifteen years, VSI has placed critical reliance on Pentax. In violation of its obligations, however, Pentax is now engaged in a persistent pattern of refusing and delaying the filling of orders and thereby seriously disrupting (and even recently halting) VSI's ability to manufacture and service its products and operate its business affairs. In this way, Pentax is constructively terminating its relationship with VSI in disregard of its contractual requirements, by seeking to unilaterally impose severe limits on the quantity of parts it will deliver to VSI and seeking to impose unjustified, prohibitive price increases. These efforts not only are starving VSI of access to key components, but also threaten to destroy the viability of VSI's product lines that are dependent on Pentax, and to impede important strategic business relationships and commitments that VSI has assumed and established in recent years.

3.      By effectively depriving VSI of supplies, Pentax is acting in bad faith and at odds with responsible commercial practices. Accordingly, VSI is entitled to, among other things, an expeditious declaration that Pentax must supply orders to VSI consistent with its contractual obligations and with customary practices. VSI also is entitled to monetary damages suffered as a result of Pentax's wrongful conduct, as well as to injunctive relief.

### Parties

4.    VSI is a medical device company organized under the laws of the State of Delaware, with its principal place of business at 40 Ramland Road South, Orangeburg, New York 10962.

5.    On information and belief, Pentax Corporation ("Pentax Japan") is a corporation organized under the laws of Japan, with its registered office at 2-36-9, Maeno-cho, Itabashi-Ku, Tokyo, Japan 174-8639.

6.    On information and belief, Pentax Medical Company, a Division of Pentax of America Inc., ("Pentax America") is a corporation organized under the laws of the state of Delaware, with its principal place of business at 102 Chestnut Ridge Road, Montvale, New Jersey 07645.

7.    Pentax America has acted as an agent and instrumentality of Pentax Japan throughout the span of the agreements with VSI. Pentax Japan has instructed VSI to direct all communication regarding the agreements and corresponding activities to Pentax America. Accordingly, Pentax America has directly participated in the contractual relationship. For example, Kenichi Ohara, Vice President and General Manager of the Lifecare Business Division at Pentax Japan, sent an e-mail dated November 21, 2007 to Ron Hadani, President and CEO of VSI, explaining to Mr. Hadani that "PENTAX Medical Company ("PAMC") is an arm of PENTAX Corporation-Japan ("PC"), and David Woods, President of PAMC, speaks for PC and its global affiliates." In addition, Mr. Ohara wrote, "kindly direct all further communications and requests for clarification including delivery schedule[s] to the attention of Mr. Woods with whom I have the direct and keen communication in PENTAX." In recent communications, it has been Pentax

3

America's in-house general counsel who has directly communicated and with VSI and proposed to amend the contractual relationship between Pentax Japan and VSI.

## Basis for Arbitration

8.    The relationship between VSI and Pentax involves a series of related agreements, based on the Supply Agreement dated March 16, 1992 (the "Supply Agreement"), which was subsequently renewed by the Amendment to Supply Agreement dated October 1, 2002, the Memorandum dated March 16, 2003, and the Memorandum dated May 23, 2006. The original Supply Agreement sets forth certain material provisions that remain in effect in defining the obligations of the parties. Section 9 of the Supply Agreement, in a provision renewed by the subsequent agreements, provides that a dispute "shall be settled and finally determined by arbitration in accordance with the rules of a mutually acceptable International Arbitration Organization." A copy of the Supply Agreement is annexed hereto as Exhibit A, which is incorporated by reference as if fully set forth herein. Since at least August 2007, VSI has acted diligently in raising and attempting to address with Pentax the issues involved in this dispute. But VSI's good faith efforts to resolve the matter have been to no avail.

## Factual Background

Business Relationship History

9.    In March 1992, VSI and Pentax (formerly known as Asahi Optical Co.) entered into the Supply Agreement. Under the Supply Agreement, and its subsequent renewals, Pentax has supplied VSI with critical components for the manufacture of endoscopes and related devices. Pentax is VSI's largest and most critical supplier, providing over fifty component parts for its endoscopes. VSI purchased approximately

4

$1,828,000 and $1,867,000 worth of Pentax products during 2005 and 2006, respectively.

10.     Pentax is both VSI's most significant supplier and competitor in the field of endoscopes. An endoscope is an instrument that allows medical professionals to look inside the human body to assess and diagnose various medical conditions. Both companies produce several types of endoscopes including ENT (ear, nose and throat) endoscopes, Trans-Nasal Esophagoscopes and Bronchoscopes. VSI also produces Cystoscopes, which are used by urologists, as well as various industrial endoscopes used for inspection of mechanical equipment. Both companies market and sell finished products, but VSI also offers unique and innovative technology for the benefit of patient care and clinical outcomes. VSI's flexible endoscopes use a sterile, disposable sheath that prevents the endoscope from coming in contact with a patient's body. This unique technology enables medical professionals to perform the only sterile flexible endoscopy procedure available today, protecting patients from the possibility of cross contamination and healthcare providers from the exposure to hazardous materials used for cleaning flexible endoscopes. No other endoscope producers, including Pentax, have integrated this proprietary technology into their endoscopes.

11.     Pursuant to Section 2.1 of the Supply Agreement, VSI is required to submit Purchase Orders to Pentax identifying the quantity of the products it intends to purchase. Once a purchase order is received,

> [Pentax] will confirm purchase order with expected
> delivery dates within fourteen (14) days. Once [Pentax]
> has confirmed purchase order, [Pentax] shall give equal
> priority to the production and delivery of Products for VSI
> as to any such Products or substantially similar Products
> produced for the benefit of Pentax.

5

Between 1992 and 2006, the Pentax/VSI relationship generally proceeded according to the contractual terms and in an amicable manner. During the lengthy relationship, the established and accepted course of dealing between the parties was for VSI to submit a Purchase Order with a delivery schedule; then, absent a specific objection, the Purchase Order was relied on as confirmed and Pentax routinely shipped the components according to VSI's requested schedule.

VSI Switches to Pentax Subassemblies for its ENT Endoscopes

12.      Prior to 2006, VSI purchased basic components from Pentax and, in conjunction with its own components, assembled them into various models of finished endoscopes. In September 2005, Pentax and VSI commenced discussions over the prospect of VSI purchasing fully assembled, private-labeled ENT endoscopes from Pentax, rather than producing ENT endoscopes at VSI's New York facility. However, due to VSI's desire to continue specific design features and to maintain some level of internal ENT production, VSI chose not to purchase finished ENT endoscopes from Pentax. Instead, Pentax and VSI reached an agreement for VSI to purchase subassembly units for ENT endoscopes from Pentax. Subassembly units are preassembled components. Essentially, VSI continued to purchase the same component parts from Pentax, only now, they came preassembled. This was neither an easy nor short transition process for VSI, which Pentax was fully aware of and recognized. Such significant change required new regulatory approvals from the United States Food and Drug Administration ("FDA"), as well as European approvals. These approvals involved months of testing, as well as long and costly validation processes. Although Pentax had already completed the very same testing and validation processes, it refused to disclose to

6

VSI necessary technical information that would expedite VSI's transition. As a result, VSI was forced to undertake the long and costly validation process on its own. Once the process was successfully completed and the FDA cleared VSI to market its endoscopes. VSI began to order ENT subassemblies from Pentax as planned and in accordance with the Supply Agreement.

Pentax Fails to Deliver ENT Subassemblies On Time or At All

13.    On October 19, 2006, VSI placed a Purchase Order (the "October Purchase Order") for 200 ENT subassembly units. The October Purchase Order requested that Pentax deliver the subassembly units in three separate installments: 70 units on January 5, 2007, 70 units on February 5, 2007 and 60 units on March 5, 2007. Pentax did not object to this delivery schedule and failed to deliver the subassembly units on the requested delivery dates. Instead of three shipments as requested in the October Purchase Order, the subassembly units arrived in fourteen separate shipments, the last one arriving on April 19, 2007.

14.    On May 31, 2007, VSI placed another Purchase Order (the "May Purchase Order"), this time for 210 ENT subassembly units specifying the following delivery schedule: 70 units on August 1, 2007, 70 units on September 1, 2007 and 70 units on October 1, 2007. On June 8, 2007, VSI received an e-mail from Pentax unilaterally revising the delivery schedule. In the e-mail, Pentax informed VSI to "plan accordingly based on the new dates." Instead of shipments arriving at VSI on August 1, September 1 and October 1, the shipments were now slated to leave Japan "around October 5" and "around November 7" and "around December 7." Ten days later, on June 18, 2007, Pentax and VSI met with the objective to address VSI's concerns over the

7

adjusted delivery schedule for the May Purchase Order, but to no avail.

15.     Even though Pentax advised VSI to "plan accordingly" based on the revised dates it had unilaterally set, Pentax still failed to meet its own revised delivery schedule for the May Purchase Order. As of today, Pentax has delivered only 140 of the 210 units ordered, which arrived in eighteen separate shipments, rather than three as specified. The last delivery under the May Purchase Order arrived on November 5, 2007 and contained 2 ENT subassembly units. VSI has not received another unit since. Throughout this period, VSI made numerous, unsuccessful attempts to obtain assurances and information regarding the shipment of the final 70 units under the May Purchase Order. Then, on or about November 13, 2007, Pentax sent VSI a spreadsheet (the "Open and Released Orders Summary") with the latest shipping information. According to the Open and Released Orders Summary, 5 units were slated to leave Japan on November 15, but to this date, none have arrived. No information regarding the other 65 units has been provided.

16.     On a telephone call on July 12, 2007, Pentax America requested that VSI place a longer-term order (the "July Purchase Order"), which would confirm VSI's forecasts and demonstrate VSI's commitment to senior Pentax personnel in Japan. In response to Pentax's request, VSI placed the July Purchase Order on July 13, 2007. The July Purchase Order called for 180 subassembly units per month for twelve months, beginning in November 2007.

17.     On July 24, 2007 eleven days after the July Purchase Order was placed, VSI had not received a response. Concerned by Pentax's failure to respond, Mr. Hadani, VSI's President and CEO, sent an e-mail to Takayoshi Morishima at Pentax explaining

8

that VSI is "rapidly approaching a cris[i]s." Not only was VSI without a confirmation on the large July Purchase Order placed specifically at Pentax's behest, but it was "still awaiting answers regarding the status of several old purchase orders of critical parts." This was not the first time that Mr. Hadani objected to Pentax that its recent repeated delays were detrimental to VSI. In fact, in an e-mail sent by Mr. Morishima on June 13, 2007, Pentax acknowledged these unacceptable delays, stating that Pentax "understand[s] that [VSI is] facing a very big problem caused by the delivery time."

18.    Three days later, following Mr. Hadani's e-mail, on July 27, 2007, VSI received a modified shipping schedule for the July Purchase Order. Pentax unilaterally reduced the quantity from 180 units per month to 90 units per month and stretched the delivery schedule from twelve to twenty-four months, something Pentax had never done before. Since it had no alternative, VSI stated that it would accommodate Pentax's request for a new delivery schedule. Yet, on September 4, 2007, VSI received still another request from Pentax to further amend the July Purchase Order, this time shortening the delivery period from twenty-four months back down to twelve, while holding the quantity at 90 units per month. Pentax then took the position that the two sides should meet and until the meeting, VSI should refrain from sending any new Purchase Orders to Pentax.

19.    At a meeting on September 21, 2007 between David Woods, President of Pentax America, Mr. Hadani and Yoav Cohen, CFO of VSI, Pentax admitted its business goals and informed VSI that it intended to terminate the Supply Agreement as soon as possible. But not waiting for the contractual period to expire, Pentax also demanded that the current Supply Agreement be amended, seeking significant changes to the contractual

9

obligations owing to VSI. Then, on October 5, 2007, Pentax sent VSI the proposed amended Supply Agreement. In the proposed amended Supply Agreement, Pentax sought to impose severe limits on its delivery obligations, which, if implemented, would be extremely detrimental to VSI. The proposed amended Supply Agreement also eliminated the provision that required Pentax to "give equal priority to the production and delivery of Products for VSI as to any such Products or substantially similar Products produced for the benefit of [Pentax]." In addition, Pentax provided VSI with a new pricing list. The new pricing list drastically increased the prices of Pentax components -- up 624% in one case, without any justification. The new pricing list limited the Products that VSI may purchase from Pentax, stating that "The Supply Agreement shall apply only to those products listed herein." The pricing list also contained a provision providing that the "pricing contained herein is subject to change at the sole discretion of PAMC, without prior notice to VSI." VSI advised Pentax that it could not agree to these one-sided, unjustified changes.

20.     Six days after the meeting, on September 27, 2007, VSI requested an updated delivery schedule for the July Purchase Order. Pentax informed VSI that no delivery schedule was available because the July Purchase Order was "on hold." This was the first time anyone from VSI was notified about the unilaterally-imposed hold. The July Purchase Order had been outstanding for over two months, there had been multiple revisions, and VSI was operating under the assumption that Pentax was going to deliver the ENT subassemblies according to the revised July Purchase Order. Yet again, that did not happen. Pentax refused to provide VSI with any information regarding the hold on the July Purchase Order, as well as many other Purchase Orders that had been

arbitrarily placed on hold by Pentax.

21.    On October 1, 2007, Pentax again amended the July Purchase Order, even though it was on hold, reducing the quantity from 90 units per month to 50 units per month. VSI notified Pentax that this was not an acceptable quantity reduction, but had no choice but to temporarily accept these modifications. VSI had numerous outstanding orders to fill and there were no substitute suppliers readily available. Pentax was fully aware that VSI was not able to switch suppliers for components and ENT subassembly units at that point, for it would have to go through many months of costly development and regulatory procedures with the FDA before it would be able to use components from new suppliers. Pentax was also aware that VSI has its own customers with long-term commitments to supply and service, and without Pentax components, VSI was unable to meet all of its orders and obligations.

22.    After VSI agreed to the final modification to the July Purchase Order, it requested an updated delivery schedule for the July Purchase Order, and all other outstanding Purchase Orders. Pentax informed VSI that the July Purchase Order was still on hold. Again, VSI was unable to ascertain the reasons for the delay.

23.    After multiple requests by VSI, on November 13, 2007, Mr. Hadani of VSI met with Mr. Woods, other Pentax America managers and Mr. Ohara of Pentax Japan in order to stave off the impending crisis. At the meeting, Mr. Hadani explained the harm that Pentax was causing VSI and that VSI's production was about to shut down. In addition, he stressed to both Pentax America and Pentax Japan that Pentax's delays have left VSI unable to fulfill its own orders from its long-term customers. Mr. Hadani attempted to explain to Pentax that 50 ENT subassemblies per month were not enough to

11

service VSI's customers, and reminded Pentax that it had originally agreed to 90 per month. Mr. Woods informed Mr. Hadani that Pentax would not supply more than 50 ENT subassemblies per month and that the subassemblies would be subject to significant price increases beginning June 1, 2008.

24.    Later that day, Pentax sent VSI the Open and Released Orders Summary, which confirmed that the July Purchase Order was still on hold, as well as the status of other outstanding Purchase Orders that were also placed on hold. No other information was provided. Two days later, on November 15, 2007, Pentax sent VSI another amended Supply Agreement. The new Supply Agreement, and the accompanying e-mail confirmed that Pentax would "cap[] shipments at 50 pieces per month." Again, VSI advised Pentax that it could not agree to these one-sided, unjustified changes. With respect to the Purchase Orders, there was no further communication from Pentax.

Pentax Fails to Deliver Other Components On Time or At All

25.    Pentax has also failed to deliver other necessary components for VSI's endoscopes. As Pentax is well aware, VSI's production process can be brought to a halt even if Pentax fails to timely provide only one or a few of the ordered parts. The following examples are illustrative of Pentax's failure to deliver component parts to VSI.

26.    On July 19, 2007, VSI placed an order for 2,000 Screws (the "Screw Purchase Order"). The Screw Purchase Order requested a delivery date of October 1, 2007 for the entire order. VSI received 1,000 Screws on August 13, 2007. However, VSI has yet to receive the other 1,000 Screws – components that are absolutely essential for its day-to-day operations. In the November 13, 2007 Open and Released Orders Summary, an unidentified number of Screws were set to leave Japan on December 21.

12

2007, over five months after the order was placed and almost three months after VSI's requested delivery time. VSI does not know how many Screws to expect in this shipment, which severely limits its ability to forecast its production.

27.    On August 8, 2007, VSI placed an order for 1,000 Springs, with a requested delivery date of August 30, 2007 for the entire order. VSI received 100 Springs on September 17, 2007. Pentax failed to provide VSI with an explanation as to why only ten percent of its order was delivered. Since, no more Springs have been delivered. According to the Open and Released Orders Summary, an unidentified number of Springs are set to leave Japan on December 25, 2007, over three months after the requested delivery date. VSI does not know how many Springs to expect in this shipment, which severely limits its ability to forecast its production.

28.    On August 16, 2007, VSI placed an order for 400 Ocular Trim Rings (the "Ring Purchase Order"), with a requested delivery dates of November 1 (200 Rings) and December 3 (200 Rings). The next day, Pentax informed VSI that the Ring Purchase Order, among others that VSI had placed on August 16, were on hold. No further information was provided. By this time, VSI had been consistently unable to get in contact with the proper personnel at Pentax regarding the holds on multiple Purchase Orders. VSI managers were frequently told by Pentax America that these matters were being discussed in Japan and no information would be available until it heard back from Japan. As of November 13, when VSI received the Open and Released Orders Summary, the Ring Purchase Order was still on hold. The Open and Released Orders Summary provided no reason why, only an "On Hold" notation in the delivery column.

VSI Has Been Seriously Harmed

29.    As a consequence of Pentax's arbitrary and outrageous conduct, VSI has been and will continue to be significantly damaged in terms of lost business opportunities, harm to reputation concerning its ability to service new and existing customers and the incursion of other costs arising from this dispute.

30.    Pentax has refused to engage in good faith communications with VSI, including a failure to return phone calls, respond to e-mails and most importantly, supply VSI with the components and ENT subassembly units that Pentax is contractually obligated to deliver. VSI still has multiple outstanding Purchase Orders on hold and Pentax has failed to provide any meaningful explanations as to why they are on hold or when Pentax will resume its delivery schedule. Pentax is fully aware that VSI has outstanding orders from its customers that it is unable to timely satisfy as a result of Pentax's delays and failures. As VSI continues to wait, its orders continue to accumulate, leaving it further and further behind schedule. It also continues to lose orders and customer goodwill.

31.    Although the Supply Agreement provides that VSI may seek alternative suppliers to Pentax, there is no feasible alternative in the immediate time frame, which Pentax, as an experienced medical device manufacturer, well understands. In recognition of the substantial efforts and costs in switching suppliers, the Supply Agreement prohibits either party from terminating the Supply Agreement, except in circumstances wholly inapplicable here.

14

## FIRST CLAIM
### [DECLARATION]

32.    VSI repeats and realleges each of the allegations in paragraphs 1 through 31 above as if fully set forth herein.

33.    By reason of Pentax's refusal to abide by its supply obligations and attempt to abruptly and radically change terms of the Supply Agreement, a live and justiciable controversy exists.

34.    Accordingly, this Panel should declare that Pentax must immediately meet delivery schedules, supply orders to VSI consistent with its contractual obligation to give the Products for VSI production and delivery priority at least equal to other Products, and to otherwise act in accordance with customary practices.

## SECOND CLAIM
### [BREACH]

35.    VSI repeats and realleges each of the allegations in paragraphs 1 through 34 above as if fully set forth herein.

36.    By reason of its conduct, Pentax has acted in breach of material obligations owing to VSI. Among other things, Pentax repeatedly has failed to satisfy obligations to timely deliver its products and to give at least equal priority to VSI products as it gives to other products. Pentax's actionable breaches include significant violations of express contractual provisions, as well as significant violations of Pentax's obligations of good faith and fair dealing owing to VSI. As a result, VSI has incurred significant and continuing damages.

37.    For over two decades, Pentax has knowingly held itself out to VSI as a

15

reliable supply source for critical parts. VSI has justifiably and reasonably relied on Pentax to fulfill its commitments. By its acts, Pentax has failed to satisfy its commitment to VSI.

38.    Accordingly, Pentax is liable to VSI in an amount to be proven at the hearing in this matter.

### Prayer for Relief

WHEREFORE, claimant VSI prays for judgment against respondents, jointly and severally, as follows:

a.    On the First Claim, a declaration that Pentax must meet delivery schedules, supply orders to VSI consistent with its obligation to give products for VSI production and delivery priority at least equal to other products, and otherwise act in accordance with customary practices;

b.    On the Second Claim, damages in amount to be proven at the hearing in this matter;

c.    An expedited hearing on this matter;

d.    Interest to the maximum extent of the law, attorneys' fees and the costs and disbursements of this action;

e.    Injunctive relief; and

f.    Such other, further, and different relief as the Panel deems just and proper.

Dated:     December 11, 2007
           New York, New York

PROSKAUER ROSE LLP


By: _____
    Hal S. Shaftel
    Daniel P. Goldberger
1585 Broadway
New York, NY 10036-8299
Phone: (212) 969-3000

*Attorneys for Claimant Vision-Sciences, Inc.*

17

SUPPLY AGREEMENT

This Supply Agreement (the "Agreement"), dated as of March 16, 1992, between Vision-Sciences, Inc., a Delaware corporation ("VSI"), and Asahi Optical Co., Ltd., a Japanese corporation ("Asahi"),

WITNESSETH:

WHEREAS, Asahi manufactures certain endoscope units and accessories; and

WHEREAS, VSI desires to purchase certain endoscope units, parts and accessories from Asahi and Asahi desires to sell such products to VSI all upon the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto hereby agree as follows:

SECTION 1:  PRODUCTS AND DEFINITIONS

1.1  PRODUCTS.  Subject to the terms and conditions of this Agreement, Asahi agrees to manufacture and sell to VSI and VSI agrees to purchase from Asahi certain Asahi Components.

- 1 -

1.2  DEFINITIONS.  For purposes of this Agreement capitalized
terms used herein shall have the following meanings:

    (a)  Asahi Components shall mean any standard or catalog
      devices, subassemblies and components used to
      assemble or repair VSI Endoscopes.

    (b)  Asahi Information shall mean any design documentation
      which are the property of Asahi and utilized in the
      manufacture of Asahi Components, VSI Endoscopes or
      any improvements of either.

    (c)  VSI Endoscope shall mean any endoscope designed
      by VSI which incorporates a disposable sheath
      assembly including disposable channels and which
      is manufactured using VSI Information.

    (d)  VSI Information shall mean any design documentation,
      information, knowledge, data, issued or pending
      patents or materials which are the property of
      VSI and utilized in the manufacture of VSI
      Endoscopes or any improvements thereof.

    (e)  VSI Specification shall mean any product or
      quality standard specified to Asahi by VSI for
      Asahi Components to be purchased by VSI.

SECTION 2:  PURCHASE AND SALE OF PRODUCTS.

    2.1  QUANTITY.  During the term of this Agreement, VSI will
provide Asahi with a three month firm written purchase order for
the exact quantity and VSI Specifications of all the Products it
shall purchase during such three month period.  Asahi will confirm

- 2 -

purchase order with expected delivery dates within fourteen (14) days. Once Asahi has confirmed purchase order, Asahi shall give equal priority to the production and delivery of Products for VSI as to any such Products or substantially similar products produced for the benefit of Asahi. Nothing in this Agreement shall prohibit VSI from manufacturing or contracting with another party to manufacture any VSI endoscope.

2.2   PRICE.  Asahi will provide VSI with firm price quotations prior to purchase order.

2.3   DELIVERY.  Asahi shall deliver to VSI any Products ordered by VSI in finished form according to VSI Specifications and packaged in the manner requested by VSI. Asahi shall ship VSI's orders to such locations as VSI may from time to time hereafter designate in writing to Asahi, F.O.B. Asahi's place of manufacture. Shipping costs will be added to VSI's invoice or shipped freight collect. If Asahi fails to meet VSI's delivery requirements and VSI finds it necessary to require shipment of any Product by a method of transportation other than the method originally specified, Asahi shall reimburse VSI the amount, if any, by which the cost of the more expeditious method of transportation exceeds the cost of the method of transportation originally specified unless such failure is due to causes beyond the control and without fault or negligence of Asahi.

2.4   PAYMENT.  Payment for each shipment to VSI of the Products is due from VSI within thirty (30) days following VSI's receipt of the Products.

- 3 -

SECTION 3:  WARRANTY AND NON-CONFORMING PRODUCTS.

3.1  WARRANTY.  The Products purchased by VSI and delivered by Asahi hereunder shall conform to VSI Specification.  Asahi provides no warranty to VSI but agrees to discuss in good faith any Asahi Products problems requiring product exchange or recall.

3.2  NON-CONFORMING PRODUCTS.  VSI may reject any Product (or shipment) which does not conform to VSI Specifications.  In order to reject a Product, VSI must give notice to Asahi of VSI's intent to reject within ten (10) days after VSI's receipt of the alleged non-conforming Products.  Asahi will replace Non-Conforming Products with other Products of good quality as soon as possible.

SECTION 4:  PATENT

VSI takes all responsibilities regarding the patent infringement claimed by any third party as to the VSI endoscopes including the patent regarding the parts VSI purchased from Asahi and keeps Asahi indemnified from the third party's claim. On the other hand, Asahi does not require VSI to pay to Asahi royalty for the parts VSI purchases from Asahi and Asahi offers assistance to VSI in defending the claim brought up by third party.  In case VSI endoscope or its parts purchased from third party infringes Asahi's patent, VSI is ready to pay royalty.

SECTION 5:  PROPRIETARY INFORMATION

5.1  CONFIDENTIALITY.  VSI and Asahi each shall, during the Initial Term or any Renewal Term of this Agreement and thereafter for eternity, hold in confidence, and use its best efforts to have all of its affiliates, agents, officers, directors and

- 4 -

employees hold in confidence, all knowledge and information of
a secret or confidential nature with respect to the business of
the other party and shall not disclose, publish or make use of
the same without the consent of the other party for any purpose
whatsoever, except to the extent necessary to fulfill its
obligations hereunder or if such information shall have become
public knowledge other than by breach of this Agreement or except
as may be required by law.  Upon termination or expiration of
this Agreement, each party shall, within two (2) business days
of receipt of a request thereof, return to the other party all
copies of all confidential information of the requesting party
and all other tangible manifestations of such confidential
information.

    5.2  COMPENSATION.  VSI and Asahi each agree that the remedy
at law for any breach of this Section 5 would be inadequate and
that the non-breaching party shall be entitled to injunctive
relief in addition to any other remedy it may have upon breach
of any provision of this Section 5.

SECTION 6:  TERM OF AGREEMENT
    6.1  INITIAL TERM.  The term of this Agreement shall commence
as of the date hereof and shall remain in full force and effect
until the third anniversary of the date hereof (the "Initial
Term"), unless renewed as provided in Subsection 6.2 below or
sooner terminated pursuant to Section 7 hereof.

    6.2  RENEWAL TERM.  At the expiration of the Initial Term
(and, if applicable, at the expiration of any Renewal Term),

- 5 -

the term of this Agreement shall be automatically renewed for additional two (2) year period ("Renewal Term") unless this Agreement is terminated pursuant to Section 7 hereof or unless either party provides the other with one (1) year prior written notice of its intent not to renew this Agreement.

SECTION 7:  TERMINATION

This Agreement may be terminated during the Initial Term or any Renewal Term, at any time, as follows:

7.1  MUTUAL CONSENT.  By the written mutual consent of VSI and Asahi.  In the event of such termination by agreement, except as set forth in Section 5 hereof, neither party shall have any further obligation or liability under this Agreement.

7.2  BREACH.  By the non-breaching party if there has been a breach of any material provision of this Agreement by the other party which breach either (i) cannot be cured by the breaching party, or (ii) has not been cured by the breaching party within thirty (30) days of having received written notice of such breach from the non-breaching party.

7.3  BANKRUPTCY.  At the option of the other party, if either party makes any assignment for the benefit of creditors, or if a receiver, trustee in bankruptcy or similar officer shall be appointed to take charge of all of either party's property, or if either party files a voluntary petition under federal bankruptcy laws or similar statutes or such a petition is filed against either party and is not dismissed within sixty (60) days.

- 6 -

SECTION 8:  FORCE MAJEURE

Neither party hereto will be liable to the other for default or delay in the performance of any of its obligations hereunder (except an obligation to make payments when due), including, but not limited, due to Act of God, accident, fire, riot, war, strike, concerted acts of workers, governmental law, ordinance, rule or regulation, whether valid or invalid, inability to obtain electricity or other type of energy, raw material, labor, equipment or transportation, or any similar or different contingency beyond its reasonable control which would make performance commercially impracticable.  If such party shall have used its reasonable efforts to avoid such occurrence and minimize its duration, such party shall give notice to the other party in writing promptly, and thereupon the affected party's performance shall be excused and the time for performance shall be extended for the period of delay or inability to perform due to such occurrence.

SECTION 9:  ARBITRATION

In the event of a disagreement over any term or provision contained in this Agreement which has not been resolved by the parties hereto within sixty (60) days after both parties have written notice of such dispute, the parties hereby agree that the matter shall be settled and finally determined by arbitration in accordance with the rules and regulations of a mutually acceptable International Arbitration Organization.  The decision rendered in any such arbitration shall be final and binding upon the parties and may be entered in any court having jurisdiction

- 7 -

thereof for a judicial acceptance of the award or an order of enforcement, as the case may be.  The parties shall each pay one-half of the reasonable costs and expenses incurred for the fees and expenses of the arbitrator or arbitrators.

SECTION 10:  MISCELLANEOUS PROVISIONS

10.1  GOVERNING LAW.  This Agreement shall be governed by and interpreted in accordance with the laws of Japan.  This Agreement is in the English language only, which shall be controlling for all purposes.

10.2  WAIVER.  The waiver by any party of a breach or a default of any provision of this Agreement shall not be construed as a waiver of any succeeding breach of the same or any other provision, nor shall any delay or omission on the part of a party to exercise or avail itself of any right, power or privilege that it has or may have hereunder operate as a waiver of any right, power or privilege.

10.3  NOTICES.  Any notice or other communication required or permitted to be delivered in connection with this Agreement must be in writing in the English language and shall, when mailed (which mailing must be accomplished by first class mail, registered mail or certified mail, postage prepaid, or overnight courier service) or telefaxed, be deemed given three (3) days after deposited in the mails or one (1) day after delivered in person or to the telefax company, respectively, addressed to the addressee as follows or to such other address which addressee

- 8 -

shall have specified in a notice actually received by the
addressor:

        To VSI:    Vision-Sciences, Inc.
                   6 Strathmore Road
                   Natick, Massachusetts 01760
                   Facsimile: (508) 650-9976

                   Attn: Mr. David W. Prigmore, President


        To Asahi:  Asahi Optical Co., Ltd.
                   36-9, Maeno-cho 2-chome,
                   Itabashi-ku, Tokyo
                   Facsimile: (03) 3960-5226

                   Attn: Mr. Kinhei Yajima, Managing Director


    10.4  ENTIRE AGREEMENT.  This Agreement contains the full
understanding of the parties hereto, except the Letter Agreement
dated March 14, 1992 regarding indemnification provided to Asahi
by VSI, with respect to the subject matter hereof and supersedes
all prior understandings and writings relating thereto.  No waiver,
alteration, amendment, or modification of any of the provisions
of this Agreement shall be binding unless made in writing and
signed by each of the parties hereto.  The parties hereto hereby
confirm that this Agreement shall have no effect upon the Non-
Exclusive License Agreement entered into September 28, 1989 by
and among Asahi, OpieLab, Inc., a wholly-owned subsidiary of VSI
and O.S. Limited Partnership, a limited partnership organized
and existing under the laws of the State of Washington.


    10.5  SEVERABILITY.  In the event that any provision of this
Agreement is held by a court of competent jurisdiction to be
unenforceable because it is invalid or in conflict with any law of
any relevant jurisdiction, the validity of the remaining provisions

                              - 9 -

shall not be affected, and the rights and obligations of the parties shall be construed and enforced as if this Agreement did not contain the particular provision held to be unenforceable.

10.6  SUCCESSORS AND ASSIGNS.  This Agreement shall be binding and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives and successors.  It is not the intention of either party to assign this Agreement.  VSI may request Asahi's written consent, which will not be unreasonably withheld, in the case VSI seeks to assign by merger or sale of assets.

10.7  STATUS OF PARTIES.  The relationship of the parties hereunder shall be and at all times remain one of independent contractors, and neither party shall have any authority to create or assign obligations on behalf of the other party hereto.

10.8  COUNTERPARTS.  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which shall be one and the same document.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year set forth above.

VISION-SCIENCES, INC.                      ASAHI OPTICAL CO., LTD.

By: _____              By: _____
    David W. Pragmore                         Tohru Matsumoto
    President                                 President

- 10 -